FLINT v. COFFIN et al.

(Circuit Court of Appeals, Fourth Circuit. February 1, 1910.)

No. 823.

1. REMOVAL OF CAUSES (§ 97*)—PROCEEDINGS FOR REMOVAL—EFFECT OF FILING PETITION AND BOND.

The filing of a proper and sufficient petition and bond for the removal of a cause terminates the jurisdiction of the state court, and any subsequent proceedings therein in such court are coram non judice, and absolutely void.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 206; Dec. Dig. § 97.*]

2. APPEARANCE (§ 9*)—GENERAL OR SPECIAL—PROCEEDINGS FOR REMOVAL OF CAUSE.

The filing of a petition for removal in a state court, and of a memorandum by counsel with the record in the federal court on denial of the petition by the state court, stating that they appear for the removing defendant, and their appearance to argue a motion to remand, are all acts essential to secure the removal, and properly done under a special appearance for that purpose, and do not singly or together amount to a general appearance of the defendant, which will preclude them from attacking the jurisdiction of the court on the ground of insufficiency of service.

[Ed. Note.—For other cases, see Appearance, Cent. Dig. § 50; Dec. Dig. § 9.*]

3. REMOVAL OF CAUSES (§ 114*)—PROCEEDINGS AFTER REMOVAL—JURISDICTIONAL QUESTIONS.

A party removing a cause to a federal court has a right, after the removal, to the judgment of that court on any question relating to the validity of the service of process, even though such question has been passed on by the state court, since it affects the jurisdiction of the federal court itself.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 241; Dec. Dig. § 114.*]

4. ATTACHMENT (§ 209*)—SERVICE BY PUBLICATION—CONDITIONS PRECEDENT.

Statutes authorizing the service of process on nonresident property owners, by publication, in attachment suits, must be strictly complied with to give the court jurisdiction.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. § 676; Dec. Dig. § 209.*]

5. PROCESS (§ 96*)—SERVICE BY PUBLICATION—CONDITIONS PRECEDENT UNDER NORTH CAROLINA STATUTE—AFFIDAVIT.

Under Revisal N. C. 1905, § 442, which in certain cases authorizes the making of an order for service of process on a defendant by publication, where it is made to appear by affidavit to the satisfaction of the court that such defendant "cannot after due diligence be found within the state" as construed by the Supreme Court of the state, an affidavit alleging or showing due diligence and that defendant cannot be found within the state is an essential condition precedent to a valid service by publication, and an affidavit in an attachment suit which merely alleges that defendants are residents of another state and cannot be found within the state, but fails to show any diligence or search whatever, is fatally defective, and a publication based thereon does not give the court jurisdiction.

[Ed. Note.—For other cases, see Process, Cent. Dig. § 118; Dec. Dig. § 96.*]

─────────────────────────────────────
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

6. ATTACHMENT (§ 209*)—SERVICE BY PUBLICATION—ATTACHMENT SUIT—NORTH CAROLINA STATUTE.

Under Code N. C. § 352 (Revisal N. C. 1905, § 766), which provides that when the summons in an attachment suit is to be served by publication, the publication shall state the fact of the attachment, "the amount of the claims," and in a brief way the nature of the demand, an order and a publication based thereon which fail to state the amount of the plaintiff's claims are fatally defective.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. § 682; Dec. Dig. § 209.*]

In Error to the Circuit Court of the United States for the Western District of North Carolina, at Asheville.

Action by E. G. Coffin and F. M. MacDonald, partners as Coffin & MacDonald, against Charles R. Flint. Judgment for plaintiffs, and defendant brings error. Reversed.

James H. Merrimon and J. Frank Snyder (James G. Merrimon, on the brief), for plaintiff in error.

R. C. Strudwick and E. J. Justice (W. P. Bynum, Jr., Justice & Broadhurst, and Norwood & Norwood, on the brief), for defendants in error.

Before GOFF, Circuit Judge, and WADDILL and CONNOR, District Judges.

GOFF, Circuit Judge. In the Superior Court of Swain county, N. C., the defendants in error commenced this suit against the plaintiff in error and others to recover damages alleged to have been sustained because of breaches of certain contracts, charged to have been made in connection with the manufacture of timber into lumber, on certain lands located in said county. The summons issued on the 21st day of November, 1904, and was returned by the sheriff on the 28th of that month indorsed as follows:

"Due search made, and none of the defendants found in my county."

Affidavits on which to base a warrant of attachment and an order of publication were filed, the former being issued on November 21, 1904, and the latter on December 5, 1904. The attachment was levied November 21, 1904, on the land mentioned, and it is claimed by defendants in error that publication was made of the summons and attachment for four consecutive weeks, commencing December 8, 1904. The complaint was filed in the clerk's office of the superior court of Swain county, on the 23d day of February, 1905. On the 2d day of August, 1905, Charles R. Flint, one of the defendants named in the complaint, filed his petition in said superior court, together with a sufficient bond, praying for the removal of the case to the Circuit Court of the United States, as between him and said plaintiffs, upon the grounds set forth in his petition. The said superior court refused to grant the order of removal, and proceeded to hear and dispose of other motions in the case. On the 7th of December, 1905, Charles R. Flint, through his counsel, filed in the office of the clerk of the United States Circuit Court for the Western District of North Caro-

lina, at Asheville, a complete transcript of the record of said cause from the state court, and the case was then duly entered upon the docket of the United States Circuit Court. At the same time counsel for Charles R. Flint filed with the clerk of the last mentioned court a memorandum in writing which, after reciting the said cause, read as follows:

"To the clerk of the Circuit Court: Take notice that we appear as counsel for the defendant, Charles R. Flint, in the above-entitled action."

The next action taken in the Circuit Court was on March 3, 1906, when the plaintiffs below moved to remand the case to the superior court of Swain county, which motion was, after argument of counsel for plaintiffs and defendant Flint, overruled by the court. On May 14, 1906, Flint moved the court to dismiss the suit "for imperfect service of process," and an order was then entered denying that motion, "the court being of opinion that said question has been adjudicated by the state court." To this action of the court said defendant excepted, and assigns the same as error. The court then allowed Flint 60 days in which to file his answer. The case was duly matured, came on to be heard, and was tried before a jury, which returned a verdict in favor of the plaintiffs, on which a judgment was entered against Flint, on November 28, 1907, for the sum of $85,000, and costs. The court also directed that the interest of Flint in the land on which the warrant of attachment had been levied should be sold, and the proceeds thereof be applied to the satisfaction of the judgment. The writ of error now before us was then sued out. The assignments of error relate to many questions arising during the pendency and trial of the suit, but few of which, as we see the case, it will be necessary to consider.

The petition filed by Flint in the superior court of Swain county, on August 2, 1905, was duly verified, was accompanied by a proper bond, and clearly set forth sufficient grounds for the removal of the cause to the Circuit Court of the United States. The jurisdiction of said state court over the case actually ceased when said petition and bond were filed, and all of the proceedings taken in that court subsequent thereto were coram non judice and absolutely void. Gordon v. Longest, 16 Pet. 97, 104, 10 L. Ed. 900; Virginia v. Rives, 100 U. S. 313, 316, 25 L. Ed. 175; Railroad Company v. Koontz, 104 U. S. 5, 14, 26 L. Ed. 643.

The insistence of counsel for defendants in error is that, even if it be that the service was imperfect; that the statute had not been complied with so far as the summons, order of publication, and the attachment were concerned; that such irregularities were waived by the general appearance of Flint, who by his counsel they insist submitted himself to the jurisdiction of the court below. This claim is based upon the fact that counsel for Flint filed the petition for removal in the state court; that they filed the memorandum referred to with the clerk of the court below; and that they appeared and argued the motion made by defendants in error to remand the case to the state court. These contentions are without merit. The filing of a petition to remove a cause from a state to a federal court does not amount to

a general appearance. Wabash Western Railway v. Brow, 164 U. S. 271, 17 Sup. Ct. 126, 41 L. Ed. 431; International Text-Book Co. v. Heartt, 69 C. C. A. 127, 136 Fed. 129. The paper filed with the clerk by counsel for Flint, advising that official that they so appeared, was simply a notice that they, in effectuating the removal from the state court, would file the record of the cause in the federal court. That court was not then in session, and surely the requirement of the clerk that counsel should file in his office a memorandum indicating for whom they appeared cannot be construed as a general appearance, when what was intended is kept in view—the lodging of a record which had been removed from a state court, by a proceeding that was of itself a special appearance. Nor can it be consistently held that the resistance to the motion to remand was a general appearance. All of those things that were essential to secure the final lodgment of the case on the docket and records of the court below were properly done under the special appearance made in the state court, when the petition for removal was filed. To hold otherwise would, in the light of the record of this cause, be painfully technical, would do violence to the evident intention of counsel, which was to challenge the jurisdiction of the court on the ground stated in the motion to dismiss, and would impair the rights intended to be secured to nonresidents by the acts of Congress authorizing the removal of cases against them from a state to a federal court. While it is most undoubtedly true that a general appearance will be held to be a waiver of all objections to the form or the manner of service of the subpœna, and that it will be taken as the equivalent of personal service of process, and also that by such appearance a proceeding that theretofore was in rem may be thereby converted into a personal action, nevertheless we find nothing in the record of this cause indicating that the plaintiff in error ever intended to make or in fact ever made such a general appearance in the court below as renders applicable to this case the conclusions of law we have just referred to. It is only where a defendant pleads to the merits without insisting upon the illegality relating to the process that the objections to it are held to have been waived. In the case at bar the plaintiff in error did not plead until after his motion to dismiss for lack of proper service had been overruled, and then only when required to do so. He first asked for the removal of the case by filing a petition in the state court, for which purpose his appearance there was special as it was when in the court below he tendered the record to be docketed, and opposed the motion to remand. When he moved to dismiss for want of jurisdiction because of defects in the proceedings, he did not submit himself personally to the jurisdiction of the court below, as he would have done by a general appearance, or by pleading to the merits.

It is quite clear that the court below erred in holding that the questions involved in the motion of defendant below to dismiss had been disposed of by the state court. While it is true that the record from that court disclosed that such motion had been denied, it also made it clear that such action was taken after the case had in fact been removed into the federal court. It is we think well settled that the

party causing a case to be removed to a federal court has a right, after the removal, to the judgment of that court on all questions relating to the validity of the service of process as well as upon the merits of the case. This is because of the fact that jurisdiction of the state court over the defendant so removing is involved, and that matter, even though the state court may have deemed it proper to pass upon it, may nevertheless be again considered and adjudged by the federal court. Wabash Western Railway v. Brow, 164 U. S. 271, 278, 17 Sup. Ct. 126, 41 L. Ed. 431; Courtney v. Pradt, 196 U. S. 89, 92, 25 Sup. Ct. 208, 49 L. Ed. 398; Remington v. Central Pacific Railroad Company, 198 U. S. 95, 25 Sup. Ct. 577, 49 L. Ed. 959; Tortat v. Hardin Min. & Mfg. Co. (C. C.) 111 Fed. 426; Lathrop, Shea & Henwood Co. v. Interior C. & I. Co. (C. C.) 150 Fed. 666. The court below should have considered, and we think should have sustained, that motion. When this suit was instituted, the plaintiff in error was a nonresident of the state of North Carolina. It was because of his residence elsewhere that he was entitled to remove the case into the federal court. He was sued in a state court, under the provisions of a state statute, the terms of which were required to be strictly followed. He availed himself of the benefits of the acts of the Congress of the United States, which entitled him to the judgment of the court below and of this court, concerning the questions raised by the record in the state court. The law of North Carolina (Revisal 1905, § 442), pertinent here, reads as follows:

"Where the person on whom the service of the summons is to be made, cannot after due diligence, be found within the state, and that fact appears by affidavit to the satisfaction of the court, or to a judge thereof, and it in like manner appears that a cause of action exists against the defendant in respect to whom service is to be made, or that he is a proper party to an action relating to real property in this state, such court or judge may grant an order that the service be made by publication of a notice in either of the following cases: * * * (3). Where he is not a resident of this state, but has property therein, and the court has jurisdiction of the subject of the action.

"The order must direct the publication in any one or two newspapers to be designated as most likely to give notice to the person to be served and for such length of time as may be deemed reasonable, not less than once a week for four weeks. A notice, giving the title of the action, the purpose of the same, and requiring the defendant to appear and answer, or demur to the complaint at a time and place therein mentioned; and no publication of the summons nor mailing of the summons and complaint, shall be deemed necessary." Revisal 1905, § 443.

The plaintiffs below, finding themselves under the necessity of proceeding by publication and attachment, in order to give the court jurisdiction of the subject of the action, resorted to sections 351 and 352 of the Code of North Carolina, which read as follows:

"If the action be * * * founded on a contract, and the sum demanded exceed two hundred dollars, a warrant of attachment may be obtained from the judge of the district embracing the county in which the action has been instituted, or from the clerk of the superior court from which the summons in the action issued, and it * * * shall be made returnable in term time to the court from which the summons issued. Revisal 1905, § 761.

"When the warrant of attachment is taken out at the time of issuing the summons, and the summons is to be served by publication, the order shall direct that notice be given in said publication to the defendant of the issuing of the attachment. * * * Said publication shall state the names of the

parties, the amount of the claims, and in a brief way the nature of the demand and the time and place to which the warrant is returnable. * * * " Revisal 1905, § 766.

Under these sections of the Code, did the proceedings taken by the plaintiffs below give the superior court of Swain county jurisdiction of the subject of the action? It is not claimed that the court acquired jurisdiction of the defendants personally, by virtue of the summons, attachment and publication, but that thereby it had jurisdiction to investigate and adjudge what sum, if any, the plaintiffs were entitled to recover in the action, and then to cause the attached real estate to be sold, and the proceeds applied to the payment of the sum so found due. The affidavit on which the order of publication was based, failed to comply with the requirements of the Code, and therefore did not authorize such publication. It simply stated that the defendants were all nonresidents, residing in the state of New York; that they could not be found in the state of North Carolina, and that the summons could not be served on them, or either of them. The questions of fact relating to the "due diligence" on the part of the party whose duty it was to make diligent search in the state were not set forth in the affidavit. The officer says in his return that he made "due search" and that none of the defendants were found in his county, but the affidavit is silent on the questions relating to "due diligence," which was a most essential requisite. The only way it could have been shown to the satisfaction of the court or a judge thereof was by affidavit, which either alleged "due diligence," or in which the efforts to find and serve the defendants were disclosed. Because "due search" was unsuccessfully made in one county or because the defendants were nonresidents, it does not necessarily follow that they might not have nevertheless been found and served in another county of the state. In fact the affidavit filed, which fails to show that any diligence was exercised, was made before the officer who made the return attempted to execute the summons. The statute necessarily implies that "due diligence" to find within the state the party mentioned in the summons shall be used by the person whose duty it is to serve it. That such statutes as we are now considering must be strictly complied with is without question. In Wheeler v. Cobb, 75 N. C. 21, the Supreme Court of North Carolina said:

"The service of summons by publication is fatally defective, in that it does not conform to the requirements of the statute. The foundation and first step of service by publication, is an affidavit that the person upon whom the summons is to be served cannot, after due diligence, be found within the state."

In Faulk v. Smith, 84 N. C. 501, it is said:

"On the trial in the superior court, several causes are assigned in support of the motion to vacate, only one of which do we deem it necessary to notice— the insufficiency of the affidavit to warrant an order of publication, in that it fails to show that the defendant 'cannot after due diligence be found within the state.' This averment, or its essential equivalent, is a prerequisite of publication, the effect of which is to bring an absent debtor before the court and subject his property to condemnation and sale for his debt. As it is a statutory substitute for personal service of process, the requirement of the statute must be strictly pursued. Everything necessary to dispense with personal service of the summons, says Bynum, J., in Wheeler v. Cobb, 75 N. C. 21, 'must appear by affidavit.' "

In Bank of New Hanover v. Blossom et al., 92 N. C. 695, the court held that an affidavit, stating the defendant to be a nonresident having property in the state, was insufficient, as it omitted to aver that such defendant could not, after due diligence, be found in the state. In Luttrell v. Martin, 112 N. C. 594, 604, 17 S. E. 573, it is said that "the affidavit to procure publication of summons must contain an averment that the defendant cannot, after due diligence, be found within this state."

In the case of McCracken v. Flanagan, 127 N. Y. 493, 28 N. E. 385, 24 Am. St. Rep. 481, the statute being quite similar to the one we are now considering, the court held the omission of the words "after due diligence" fatal to the service, saying that it was necessary to show due diligence by affidavit.

In the case we are now disposing of no diligence is shown in the affidavit, and no effort is made in it to set forth any act or search that can be considered the essential equivalent of the requirements of the statute. So far as the attachment is concerned, the publication fails to comply with the requirements of the statute. The amount of the claims sought to be recovered should have been set forth in the publication, and in a brief way the nature of the demand should have been described. The affidavit filed by plaintiffs below was not sufficient to authorize the order of publication of the summons, and as we understand the statutes in question, and the decisions of the Supreme Court of North Carolina relating thereto, the publication was fatally defective in regard to both the summons and the attachment. There can be no legal service by publication, in attachment cases, unless in the order directing the publication of the summons there is a direction to publish the attachment with the summons, and unless in fact both the summons and the attachment are published. In this case no such order was made, nor was there any such publication. In Cotton Mills v. Weil, 129 N. C. 452, 454, 40 S. E. 218, 219, it is said:

"The service by publication gave the court jurisdiction over the property attached (and not over the person) to the extent of its value, not exceeding the amount claimed in the publication. The object of the publication is to inform the defendant of the amount claimed, and that his property within the jurisdiction is sought to be condemned to pay that amount. Being informed by the publication of the amount claimed, and it being true, the defendant might content himself with the proceedings and allow that amount collected out of his property. For it is especially required in section 352 of the Code that said publication (of the warrant of attachment and summons) shall state * * * the amount of claims. * * *"

We do not deem it necessary to further discuss the points relating to the illegality of the service of the summons, and the defective proceedings on which the attachment and publication were based, and of the error in the court below in failing to sustain the motion to dismiss. We think it quite evident that counsel for defendants in error, conscious of the weakness of the insistence that the plaintiff in error was, by the proceedings had, brought within the jurisdiction of the Superior court of Swain county, really rely upon their claim that he entered a general appearance in the court below as their only hope for sustaining the judgment complained of. In this contention, as

we have shown, they are mistaken. The conclusion we have reached, disposing as it does of the case, renders unnecessary a discussion of the other questions raised by the assignments of error. The judgment will be reversed, the verdict of the jury will be set aside, and the case will be remanded to the court below with instructions to dismiss the complaint.

Reversed.