## STUFF v. LA BUDDE FEED & GRAIN CO.

### No. 592.

District Court, E. D. Wisconsin.

Dec. 3, 1941.

---

Paul E. Bornemann, of Milwaukee, Wis., for plaintiff.

Charles H. Gorman, of Milwaukee, Wis., for defendant.

DUFFY, District Judge.

This action is for an alleged infringement of copyright. The matter now before the court is defendant's motion to dismiss.

The plaintiff is the widow of Harry J. Stuff, who died in Kearney, Nebraska, on February 4, 1938. Some time prior to June 24, 1914, said Harry J. Stuff and one Wilson originated the pictorial illustration which is the subject of this suit. The picture is of a boy, with a broad, vacant smile revealing a missing front tooth, and with large, outstanding ears and uncombed hair, which make him appear half-witted. The words "Me—Worry?" appear directly underneath the illustration. Thereafter Messrs. Stuff and Wilson published their work and offered it for sale to the general public with a notice of copyright inscribed thereon, which read "Copyright, Stuff and Wilson, Publishers, Black Building, Los Angeles". On June 24, 1914, the Register

of Copyright issued a certificate of copyright registration to "Stuff and Wilson". All copies of the illustration sold to the public bore the required copyright notice. The complaint alleges that Wilson died at Hollywood several years prior to the date of Stuff's death, leaving no heirs surviving him. The complaint further alleges that Stuff, by his will, left all of his property, including his right, title, and interest in the copyright in question, to the plaintiff, who has since said time published and sold same as the proprietor thereof. The complaint alleges that the defendant, in violation of the copyright issued on June 24, 1914, has, during the years 1938 and 1939, and at other times prior and subsequent thereto, caused to be printed, published, and distributed, copies of a pictorial illustration which is identical to "The Original Optimist", carrying the words "Me—Worry?" inscribed underneath. The complaint sets forth a photostat copy of the alleged infringement wherein the half-witted boy is shown with the words "Me—Worry?" appearing across his chest. He is close to a wall in a room, on which wall hangs a framed slogan, "What is home without a Mother?", and also a calendar bearing the name, "La Budde Feed and Grain, Milwaukee".

■ The defendant moves to dismiss the complaint on four grounds: (1) because the complaint fails to state a claim against the defendant upon which relief can be granted; (2) because the plaintiff has no legal capacity to sue; (3) because there is a defect in parties plaintiff, in that a necessary party has been omitted; and (4) because the copyright notice does not include the year in which the copyright was secured by publication. The reason last mentioned was not urged in the oral argument nor in the briefs which have been filed, and is clearly untenable.

■ Considering the other objections in the order stated, defendant argues that the pictorial illustration, "The Original Optimist", cannot be considered the fruits of intellectual labor within the meaning of the Constitution, Article I, § 8, Cl. 8, and the Copyright Acts. To entitle a work to copyright protection, it must be (1) *original,* in that the author has created it by his own skill, labor, and judgment (Dorsey v. Old Surety Life Ins. Co., 10 Cir., 98 F.2d 872, 119 A.L.R. 1250); and (2) *meritorious,* in that it must be connected with the fine arts (Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, 23 S.Ct. 298, 47 L.Ed. 460). Apparently no question is raised as to the originality of the picture. As to whether it is a work "connected with the fine arts", there may be a very wide and emphatic difference of opinion. Reference to other decided cases on this subject is not of much assistance, as each case is so different from the other that it must be considered by itself. It is very true that this sketch may not be considered a "work of art" in the sense with which that term is ordinarily used. Nevertheless it is distinctive. The idiotic expression coupled with the caption "Me—Worry?", is undoubtedly humorous to many people. One who has once seen the picture of "The Original Optimist" would not be likely to forget it. Undoubtedly, it has brought enjoyment or pleasure to many thousands of people, and in that sense it is a form of art. The fact that its publication is likely to amuse and not instruct does not, in my opinion, destroy its copyrightability. See Higgins v. Keuffel, 140 U.S. 428, 432, 11 S.Ct. 731, 35 L.Ed. 470. Whether or not any particular production is a work of art is of course a question of fact. Hegeman v. Springer, 2 Cir., 110 F. 374.

The courts have been quite liberal in extending copyright protection. For example, it has been held that ordinary photographs of familiar scenes are to be protected where the photographer had to exercise skill and judgment in arrangement, grouping, and lighting effects. Bolles v. Outing Co., 2 Cir., 77 F. 966, affirmed 175 U.S. 262, 20 S.Ct. 94, 44 L.Ed. 156. The viewpoint of the Supreme Court on what may be considered as a work of art is shown by the opinion of Justice Holmes in the Bleistein v. Donaldson Lithographing Co. case, supra, 188 U.S. page 252, 23 S.Ct. page 300, 47 L.Ed. 460:

" * * * Yet if they command the interest of any public, they have a commercial value—it would be bold to say that they have not an æsthetic and educational value—and the taste of any public is not to be treated with contempt. * * * That these pictures have their worth and their success is sufficiently shown by the desire to reproduce them without regard to the plaintiffs' rights. * * *"

In the instant case, although the picture of the idiotic looking boy is almost repulsive to look at, the drawing contained sufficient novelty to attract and hold the attention of many people.

496

■■. But even though it could be said that this sketch could not be encompassed within the terms "work of art" or "fine arts", it was still the subject of copyright. Under the Act of 1874, c. 301, § 3, 18 Stat. 78, 79, 17 U.S.C.A. § 63 [1], " * * * Only such cuts, prints, and engravings as constitute pictorial illustrations or works connected with the fine arts may be entered under the copyright law, * * *." 18 C.J.S., Copyright and Literary Property, § 36, p. 176. The words "connected with the fine arts" have been construed as applicable only to the word "work" and have been generally held not to confine the protection of the copyright law to pictorial illustrations known as works of fine art. Bleistein v. Donaldson Lithographing Co., supra, 188 U.S. page 250, 23 S.Ct. 298, 47 L.Ed. 460; Burndy Engineering Co., Inc., v. Penn-Union Electric Corp., D.C., 25 F.Supp. 507; 18 C.J.S., Copyright and Literary Property, § 46, p. 181. Therefore, it cannot be said that the work of the creators of "The Original Optimist" is not subject to copyright protection.

Defendant contends that the plaintiff does not have the capacity to sue, and its argument is based on the provisions of § 23, Title 17, U.S.C.A., which provide in part as follows:

" * * * That in the case of any other copyrighted work, * * * the author of such work, if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then the author's executors, or in the absence of a will, his next of kin shall be entitled to a renewal and extension of the copyright in such work for a further term of twenty-eight years when application for such renewal and extension shall have been made to the copyright office and duly registered therein within one year prior to the expiration of the original term of copyright: * * *."

Defendant argues that, as the statute does not give the right of renewal to a legatee, the plaintiff herein has no standing, because she makes her claim in the complaint on the basis of being a legatee under the will of her husband.

■■ A copyright is a purely statutory right. It is entirely distinct from the common law rights which an author or composer has in his intellectual productions. Being a statutory grant, the rights are only such as the statute confers. If we were here concerned with any rights that accrued to plaintiff under the renewal section hereinbefore quoted, there might be considerable force to defendant's contention. However, we are here concerned with an alleged right of action which accrued prior to the year in which a renewal could be obtained. It is admitted that the copyright under which suit is brought does not expire until June 24, 1942. The alleged infringements complained of occurred in the years 1938 and 1939. There can be no doubt but that the right and property of the owner in a copyright may be bequeathed by will. Title 17 U.S.C.A. § 42 provides: "Copyright secured under this title or previous copyright laws of the United States may be assigned, granted, or mortgaged by an instrument in writing signed by the proprietor of the copyright, or may be bequeathed by will." Therefore, regardless of whether the copyright is renewed before its expiration date, the plaintiff does have the capacity to sue as the sole legatee under the will of Harry J. Stuff.

The last ground for dismissal urged by the defendant presents a much more difficult question. Defendant contends that the complaint shows that the copyright was issued not only to Harry J. Stuff, but also to one Wilson, and that a representative of said Wilson is a necessary party plaintiff; that the right of copyright is an entire one, and if there were any infringement, it was of the entire copyright; and that if plaintiff should prevail herein, it would not be a final settlement of the issues, as the defendant might be again subjected to a suit by the owner of Wilson's interest in the copyright.

The plaintiff, Helen Stuff, does not claim that she has acquired the interest in the copyright formerly owned by Wilson. All the complaint alleges is that Wilson died before Stuff and alleges further, on information and belief, that Wilson left no heirs at law.

Although the motion of the defendant asks for dismissal on the ground that a necessary party has been omitted, I am assuming that reference is made to Rule 19, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. In other

---

[1] This act was not repealed by the Copyright Act of 1909, but was repealed in 1939, c. 396, § 1, 53 Stat. 1142.

words, the contention is that Wilson's widow, children, executor, or next of kin, as the case may be, are indispensable parties plaintiff in this action.

The certificate of copyright registration attached to the complaint shows that the copyright in question was issued to "Stuff and Wilson". But what form of title did they hold?

Copyright is an intangible, incorporeal right in the nature of a privilege or franchise. Also, copyright is enjoyable as a legal estate, as other movable personal property. 18 C.J.S., Copyright and Literary Property, §§ 19, 20, p. 162. No words of survivorship appear in the grant to indicate that Stuff and Wilson held as joint tenants. Joint estates, with their attendant incident of survivorship, are no longer favored by the law, and will not be found unless the parties, by specific language evidencing that intent, indicate the desire to create such an estate. Fries v. Kracklauer, 198 Wis. 547, 224 N.W. 717; Weber v. Nedin, 210 Wis. 39, 242 N.W. 487, 246 N.W. 307, 686. The principle applies to estates in personalty as well as to estates in land. Gibbs v. Emerson Electric Mfg. Co., D.C.Mo., 29 F.Supp. 810; 48 C.J., p. 237; 62 C.J., p. 410; Drake v. Hall, 7 Cir., 220 F. 905. No language can be found in either the certificate of copyright or the copyright notice inscribed on the copies of the illustration offered for sale evidencing any intent to create an estate in joint tenancy.

In plaintiff's brief it is suggested that "to all intents and purposes, it would appear that Stuff and Wilson were partners." Plaintiff then argues that Stuff, as a surviving partner, had the right to wind up the affairs of the partnership, and that the plaintiff herein, as the representative of the last surviving partner, has authority to prosecute this action. The weakness of this contention is that the complaint nowhere alleges that Stuff and Wilson were partners. There is nothing in the exhibits attached to the complaint that could be the basis for such an allegation. Nor without some positive proof evidencing such a relationship, which is lacking here, can it be presumed that the parties were co-partners merely because of their co-ownership of the copyright. Drake v. Hall, supra. The conclusion follows that Stuff and Wilson were tenants in common, or co-owners. Therefore, upon Wilson's death, his interest and rights in the copyright would not pass to Stuff.

It is settled law, with relation to suits for the infringement of patents, that each co-owner is an indispensable party plaintiff. Walker on Patents, Deller Ed., § 881H; Van Orden v. Mayor, etc., of Nashville, C.C., 67 F. 331; Carpenter v. Eberhard Mfg. Co., C.C.Ohio, 78 F. 127; Gibbs v. Emerson Electric Mfg. Co., supra, D.C., 29 F.Supp. 810; Id., D.C., 31 F.Supp. 983. So far as the law applicable to copyrights is concerned, the cases seem to hold that the "owner" or "proprietor" of the copyright must be joined in a suit to restrain infringement. Ted Browne Music Co. v. Fowler, 2 Cir., 290 F. 751; Houghton Mifflin Co. v. Stackpole Sons, Inc., 2 Cir., 113 F.2d 627; Borden v. General Motors Corp., D.C.N.Y., 28 F.Supp. 330.

In the instant case, Helen Stuff is not the sole "owner" or "proprietor" of this copyright. If we strictly followed the rule laid down in the foregoing cases, it would appear that this action cannot proceed unless the Wilson interest in the copyright is represented.

But should the plaintiff, who is the owner of an undivided one-half interest in the copyright, be left without a remedy? On this motion to dismiss we must assume as true that Wilson died without heirs at law or next of kin. As a practical matter, there probably is no person who could be ascertained or located who has title to the Wilson interest in the copyright or who could prosecute an action for infringements occurring in 1938 and 1939.

In a very recent case (MacBryde v. Burnett, D.C.Md., 41 F.Supp. 661, 663), Judge Chesnut said: " * * * The well recognized test as to whether an omitted party is indispensable is whether the adjudication of the case would necessarily result in injustice to the absent party. If the relief prayed, or some of it, can be fairly granted to the plaintiff without injustice to the absent party, then the latter is not indispensable." (Citing cases.)

In order to grant relief, courts will go to a considerable length in waiving technicalities. For example, in the case of Houghton Mifflin Co. v. Stackpole Sons, Inc., supra [113 F.2d 628], the question of title of the German publisher of Hitler's "Mein Kampf" was raised. The court said: " * * * Ordinarily, it is true, the plaintiff must establish his title without dispute,

498

but we had to choose between a denial of any real relief at all and accepting the case as made. The more recent authorities in copyright hold that a prima facie case will serve, if justice demands. * * *"

In the case of Bourdieu v. Pacific Western Oil Co., 299 U.S. 65, page 70, 57 S.Ct. 51, page 53, 81 L.Ed. 42, the court said:

"The rule is that if the merits of the cause may be determined without prejudice to the rights of necessary parties, absent and beyond the jurisdiction of the court, it will be done; and a court of equity will strain hard to reach that result. [Citing cases.]

"We refer to the rule established by these authorities because it illustrates the diligence with which courts of equity will seek a way to adjudicate the merits of a case in the absence of interested parties that cannot be brought in. * * *"

At this stage of the proceedings, considering all the allegations of the complaint, we must hold that a prima facie case has been alleged. In the event that during the trial it appears that some other interest in the copyright should be protected, the court at that time may make an appropriate order which will meet the situation. The motion of the defendant to dismiss will be denied.